May I call the first and only case? Case number 08-4393, Jesse Cowans v. Barnwood Begley. For largeness of time, please wait 30 minutes per trial. Please remain standing for the applause. Your Honor, I'd like to reserve five minutes for rebuttal. Sure. May it please the Court. I'm Vicki Ruth Adams Wernicke. At counsel table with me is Jillian Davis. We are counsel for Jesse Cowans. The issue today I'd like to direct the Court's attention to is Proposition 1 of our brief, the issue of his competency to stand trial. And the issue that I want to focus on is the due process argument, the argument that the trial court should have conducted a, ordered a competency evaluation based on Mr. Cowans' demeanor and behavior during the trial. Mr. Cowans Just to be clear, ordered a competency hearing before the guilt phase of the trial based on the reaction when the request to change counsel was denied? Your Honor, where exactly in the trial proceedings that the court should have granted or ordered a hearing is because competency waxes and wanes. But that was like the first indication that Mr. Cowans So maybe the way to put it is there are two different times perhaps one constitutionally should have been compelled, before the guilt phase or during the mitigation phase? Would that be the way to put it? Actually, Your Honor, I think there's three times during the proceedings that the judge should have been alerted by his behavior and his irrational response to what was going on that the court should have stopped the proceedings and ordered a hearing. The first was at the beginning when he was being rather disruptive and didn't seem to understand what the judge was saying. During the trial itself, there were indications that his behavior was inappropriate as even the prosecutor noted. Right before the invisible dog video was shown, the prosecutor asked that the judge admonish Mr. Cowans to stop making gestures and he even called it inappropriate behavior. The judge said, I'm not going to rule on that because it hasn't been disruptive yet. But the judge acknowledged that Mr. Cowans' behavior during the trial had been inappropriate and borderline maybe undisruptive. And even the judge's final court opinion indicated that his mood waxed and waned from smiling and cooperative to even appearing to be paranoid even during the proceedings. Those all are indications that Mr. Cowans' behavior and demeanor during the trial was an indication to the judge, was a bona fide doubt to the judge that his competency should have been questioned and the judge should have stopped the proceedings. What is the evidence, not in his behavior, but among experts, if there are some, who would testify or have testified that he was incompetent to stand trial? Your Honor, there was an expert presented on post-conviction, Dr. Haskins, who provided an affidavit saying that she suspected that he might have been incompetent. But at that point, that was a year after the trial, she could not say definitively whether or not he was incompetent. And I'm not arguing right now definitively whether or not he was because there's no way of knowing because nobody stopped the proceedings at that time and ordered it. We can't issue a writ on the grounds that there's no way of knowing. Yes, Your Honor, you can. The court can't issue a writ. The court can find that the judge had a reasonable suspicion that he may not have been competent, he may not have been able to rationally assist counsel, and that that was enough to trigger in the judge that bona fide doubt under Drope v. Missouri, under Dusky v. United States, Cooper v. Oklahoma. All those cases talk about competency. Competency doesn't have to be mental illness. It doesn't have to be that he even exhibited disruptive behavior during the courtroom. It has to do with whether or not he's able to rationally assist counsel, whether or not the behavior that he's exhibiting is logical to his ends, is logical to what he's trying to accomplish. And his behavior all the way through the trial indicated that he was not able to rationally assist counsel. At least there's a question. There's a bona fide doubt. Do you think it's cut against him that there is no evidence today showing he was incompetent? I mean, the most that could be said is he might have been. It's not like there are IQ tests or anything else that you look at today and shows, you know, that's a problem. I mean, that has to hurt him, right? Because your point is you can't prove it one way or the other. Correct. And, you know, therefore, because everyone agrees there was something unusual, every time there's something unusual, end of story. You always have to have ordered a competency hearing. That would be the rule that comes out of this case. The rule as the United States Supreme Court, the clearly established federal law, is any time there's a bona fide doubt as to competency, any time there's any kind of indicia of behavior that shows inappropriate. But, I mean, let's talk specifically about the indicia. I mean, you have the not getting what he wants on new counsel. He reacts negatively to that. That's not consistent with being incompetent. That's consistent with being competent. He's not happy with what happened, right? That makes sense. That's correct if that's the only picture, if that's just the snapshot of the case, but that's not the snapshot. Okay, so that's one. Correct. We talk about things that go on at the penalty phase. Again, things aren't going well. I mean, he's not getting what he wants. I mean, people react negatively when they don't get what they want. That's rational. Mr. Cowens had maintained his innocence all the way through this and all the way through, and he exhibited behavior that showed that he was paranoid, and the judge even acknowledged that, that he was exhibiting even his court opinion. The proof is pretty overwhelming. Of his guilt? I would say not, Your Honor. The case against him is very circumstantial. And every little piece, and while there are pieces of the puzzle that are rather incriminating and hard to explain, obviously, but it's not overwhelming. It took the jury two days to find him guilty. Even without him testifying, even without all those things you normally expect, the prosecutor in the closing argument of the guilt phase even acknowledged it was a circumstantial evidence case. There are errors that happened, even in the evidentiary part, that I think that we argue contributed to the jury finding him guilty,  But the issue about his competency has to do with the reasonable bona fide doubt of the judge that the judge should have had a bona fide doubt. They should have had it. As the Tenth Circuit held in McGregor v. Gibson, competency waxes and wanes. This rule that you're, the principle that you are proposing would have to be, we would have to apply it in every criminal case post-conviction, and that is if there is, looking back on it, some question, reasonable question about whether the person was competent, even though there is no evidence post-conviction that would show the person to be competent, incompetent, that we would have to upset the trial and start all over again. Well, that is a significant problem because it really would mean that a lot of cases are not final at all. Well, Your Honor, in this particular case, there is bona fide doubt as to his competency. As the United States Supreme Court, the clearly established Federal law is in this area, is that competency waxes and wanes, and any time that there is. Look, it can wax and wane. Correct. Not always. It doesn't always. That's not, you can't say always. It can wax and wane, yes. But that at this point, it's impossible to definitively make a substantive argument. We cannot make a substantive argument. You're saying in any case after the fact, post-conviction, that you cannot definitively say based on evidence. No, Your Honor. There are cases that you could definitively say whether or not somebody is competent or not. What I'm arguing is we don't, in order to prevail on this issue of the due process argument, is we don't have to establish whether or not he was indeed incompetent or not. Remind me of this. I should know this and I don't. Did any of these attorneys say the judge should do something? No. Why isn't that relevant? I mean, the attorneys were seeing this even more firsthand than the judge or anybody else. So they really had a bird's eye view. They knew the law. I mean. One would hope. We've made an argument also that the attorneys were ineffective for not asking for a competency hearing. But I think what's interesting is the last word that the attorneys ever were asked and made to the judge was they filed a motion a week, maybe less than a week, before the trial. I believe it was March the 6th, before trial started. They filed a motion to withdraw saying that Mr. Cowens was not cooperating with them, he was not communicating with them, and that the attorney-client relationship had diminished. The judge never ruled on it. So the last word of the attorneys on this issue about whether or not Mr. Cowens was able to rationally assist to his attorneys got left unanswered by the judge. Now, the inference could be that the attorneys didn't see fit to raise any more issues about it because the judge saw fit not to say anything. There could be all kinds of it, but I think that's a critical component in all this, is that the attorneys. Was he ever examined pre-trial? Yes. That declaration by Dr. Smalden was presented in post-conviction as part of the ineffective on the mitigation part. What was the testimony or what was the pre-trial expert opinion testimony or evidence on the subject of his mental situation? There's never been any kind of hearing in this case, Your Honor. There's never been a hearing in post-conviction or habeas. Were there any reports? There was an affidavit submitted on post-conviction from Dr. Smalden based on his findings and what his mitigation would have been. He was not asked to answer the question about competency. He did, though, articulate that Mr. Cowens is not mentally retarded but in a low-functioning area of intellect and that he does have difficulty with paranoia. Mr. Cowens doesn't have a traditional mental health illness like schizophrenia or bipolar. He's not mentally retarded, but he does have significant personality disorders that affect it. The fact that he never learned any coping skills as a child. He was number 17 of 18 children who lived in abject poverty, was abused by his family. All those things came out, and Dr. Smalden knew it. The judge wasn't aware of that, but I think that that's another issue of counsel being ineffective for not presenting that to the judge to explain to the judge why Mr. Cowens may be acting the way he is. I also think that the point of where Mr. Cowens at the penalty phase, after the jury, actually the guilt phase, after the jury returned the verdict and he started erupting in the courtroom to everybody and cursing and calling everybody foul names and had to be removed from the courtroom. That was the tipping point. That snapshot is not the end all. I'm still struggling with this. I agree that in many respects it's not the way most people behave, but I don't think it's incompetent. Incompetency would have been smiling, laughing, saying thank you. That's irrational. What he did was rational in the sense it's impolite, it's losing control, it's anger management, all those things, but it's not incompetent. It's a terrible thing that's just happened, and he's reacting against it. But it raises a question about whether or not he's logically able to assist his counsel and whether or not he's able to understand the proceedings, because the attorney even said during the hearing afterwards that Mr. Cowens believed that he would have a different jury deciding his sentence, and when he found out the same jury that found him guilty would be finding him, whether or not to get the death penalty, that's not understanding the process. That's not understanding how the jury system works, whether or not that was. It's also not incompetent. I mean, that's a tricky point. Who would know? But incompetency, Your Honor, also talks about being able to rationally assist and rationally understand. There is no requirement that there be a mental health component to a competency question in the traditional sense of when we think of someone with schizophrenia or bipolar. Competency has to do with being able to rationally assist your lawyers. Interestingly enough, counsel, there's no indication that I've found in the record that the lawyers asked him to do something or give them information or whatever. Let's assume that he was disruptive and he was a difficult client, which is not unusual in your world, I'm sure, but there's not even anything from counsel that says that the condition that he was in, whatever that might have been, prevented them from putting on a defense. Yes, there is, Your Honor. In the hearing before when he first asked to be withdrawn, the attorneys did state on the record that they had just found out about the jailhouse snitch, Marvin Napier, and they wanted to discuss it with him and Mr. Cowens wouldn't discuss it with him and that he blew up and he thought they were against him and they wouldn't discuss him with him. There's nowhere else. Anything else other than his refusal to discuss the snitch evidence? There's the motion that the attorneys filed on the eve of trial saying he's not communicating with us and he's not able to rationally assist us. I think that is a key point. To be more specific, what did that relate to? What was the strategic thing they wanted to talk to him about that he wouldn't give input on? Well, that's one of the quandaries there, Judge, is the attorneys told the judge, we can't really tell you what we want to talk about, and Mr. Cowens even said, especially with the state attorney here, with the prosecutor there. Well, they couldn't during the trial, but after the trial they could come back and say, here's what we needed to know from him. Here's the information we needed. He refused to talk to us or he talked to us and he was delusional. We don't have anything like that except he refused to talk about his relationship with Napier. Am I right about that? That was one component. They also said in the motion to withdraw that he wouldn't communicate with them at all about the case in general. Can I ask you, because another way of responding to Judge McKee's question, which I'm just curious about, is competency problem one for which you don't have to show prejudice anyway? Correct. Well, don't answer too quickly, because that's the direction of his questions, or at least it's a suggested line of how did this make a difference, and is there a case out there that says, well, listen, if there's a competency problem, you don't get out from under it if you're the state by showing there was no prejudice. What's that case? Does that case exist? McGregor v. Gibson at the Tenth Circuit, Your Honor. Oh, well, Tenth Circuit. This Court has never really addressed the issue as directly on point with that. It's not just Tenth Circuit. It's not U.S. Supreme Court is what's troubling. Well, but there is U.S. Supreme Court case because Drope v. Missouri talks about that, which is the case about competency. Saying you don't have to worry about showing prejudice? It says once there is a bona fide doubt as to competency, the trial has to stop and there has to be a hearing. If the judge does not do that, if the judge doesn't, when that reasonable bona fide doubt is in front of the judge, then yes, that invalidates the whole trial and there needs to be a whole new trial. And it then says you don't have to show prejudice? I believe it does. Yes, Your Honor. Well, interestingly enough, you go on and you quote from the part of Drope that says even if you're competent at the beginning of the trial, you have to be alert to circumstances that might indicate that change. So here he has some sort of a mental health examination apparently before the trial. You've directed us to three incidents during the trial when you contend that competency should have been questioned. So am I right in assuming that he has this examination by Dr. Smulden, whatever that was? Trial starts, he's mad that he doesn't get a new counsel. So in your argument, that would then require an examination. He's examined, they say no, he's competent. Then you get to the incident where during the trial guilt is determined and he's understandably mad about that. So now you have to do another competency examination. And then you get into mitigation and there is a question about whether a rational person would waive in the way in which he did. So in this case, without any sort of guidance that you're giving us, the very facts of this case show that the trial should have stopped and there should have been as many as four different examinations during the course of this trial. Is that right? If the behaviors continue to act, if you're just looking at this as a cold record like that, then yes, that's exactly right, Your Honor. Because the Supreme Court has said somebody can become incompetent even after they've been found competent. That there are circumstances that happen during a trial that are hard to dictate and are hard to articulate in a very specific manner. Like when this happens, you have to do this. Other than the Supreme Court has said if there's ever a bona fide doubt as to someone's competency, the trial must stop and there must be an inquiry made. And the – And you'd be violating clearly established law? The clearly established law states that. I know, but I mean it has to be a reasonable application. So you could have a situation where they do a competency hearing, they find the individual competent, he starts misbehaving again, and at that point the judge says, well, I've got the prior thing, he's obviously lapsing, but I just don't think it's appropriate. And you're saying it would be unreasonable to not have another competency hearing? Well, that's not our case, Your Honor. I realize that, but. The hypothetical there is that. But you were answering Judge McKee by saying four times yes. Well, yes in the sense that if there's ever a time when the judge should have a bona fide doubt as to whether or not someone is able to rationally assist or rationally understand the proceedings, then yes, the proceedings need to stop and there needs to be an inquiry into it. Well, the reason I ask you a question is you're saying that these incidents here were that bona fide doubt. So being mad about not getting new counsel, which incidentally you're a federal defender, right? Yes. So how many times out of 100 when you represent somebody do they complain that they want a new counsel? Well, all my clients are on death row, Your Honor, so. You're the wrong one to ask. I'm with the Capitol Habeas Unit and I've been doing this for 18 years and I can tell you the waxing and waning that happens. But I think the point is in this case, I mean, even taking those snapshots of what you're talking about is not a real fair way, to be blunt, to look at it because it talks about. All I'm trying to figure out is if there's some sort of seminal moment during the trial that any reasonable person would have said this person's competency is in question, then I think we ought to try to figure out what that is. And I'm just trying to figure out, following up on Judge Sutton's questions, why being mad at not getting new counsel, which seems to me happens frequently in all kinds of different cases, and why being mad when you're found guilty by the jury, which that's not irrational. I'd be mad too. So I'm trying to figure out what that seminal moment is here. And the only one that I can even arguably figure out is when we get all the way to mitigation and the guy doesn't say he'd rather die than live a life in prison, but he wants to waive mitigation. But even then he explains that, one, he thinks the jury is biased against him. That's not irrational in his world. They just convicted him, and he knows in his heart and in his mind he's innocent. And, two, he says, I don't want to put my family through what would come out during a mitigation phase. That's rational. Well, first of all, Your Honor, I don't believe the record reflects that Mr. Cowen said that he didn't want to put his family through it. He just said the jury is biased against him because it's a kangaroo court, and he – There wasn't something about the family? The attorney said that he told the family to not come anymore. But that could lead to the other idea of he just had thought the jury was biased against him. Somewhere I know I read, and I don't remember the source, that he explained that he didn't want to put his family through it by revealing the dysfunctional nature of it. He would rather die than reveal the dysfunctional nature. Now, that could be somebody dreaming that up. You say that didn't happen? I don't think the transcript reflects that as clearly. I think the declaration that you're talking about is from one of the post-conviction witnesses who talked about that. But the – Counsel, before you finish, I have a couple of questions I would like to ask you on a different subject than competency. All right. So finish what you want to, and then let me ask you a couple. All right. Fair enough, Your Honor. The bottom line is, judges, that in this case, there are – there have been judges that have said, yes, there should have been a hearing. Even the Ohio Supreme Court majority said, yeah, it probably would have been better if there had been a hearing, but we're going to defer to the trial judge, which I think that's not a reasonable application of the facts. Justice Moyer said definitely there need to be a hearing. Even the district court here said, yes, there should have been a hearing. The issue here is that the clearly established law is if there's ever any bona fide doubt as to someone's competency, no matter when it happens in the trial, even if it's just the second stage, that there should be an evaluation of competency. And that's just what our bottom line is. We don't have to prove these incompetencies. I think we get this point. You should listen to Judge Merritt's question. You cite Woodson v. North Carolina in your brief two or three times. Briefly, do you have an argument in your brief, or do you have an argument based on the Woodson v. North Carolina, holding as well as you remember that you can't have an automatic, mandatory death penalty, and you, in your briefs, seem to, at least at several points, think that that was applicable because in this case what had occurred was an automatic, mandatory death penalty. Would you flesh that out for me a little bit, what your theory is there? Yes, Your Honor. The fact that he waived mitigation without a complete understanding of Ohio law, which— Correct, Your Honor. So there were—the jury had before it no— Had nothing. No mitigating circumstances, but had an aggravator. Had aggravators, a couple of aggravators, and they were instructed by the trial—I'm sorry. They were instructed by the trial court that they had to give death if the aggravators outweigh the mitigators, and they had no option. How does that violate Woodson? Because it makes it an automatic death sentence. It makes it an automatic death penalty. Then you could never impose death if the defendant refuses to put on mitigation evidence. No, Your Honor, because if the jury's instructed that they—even if the aggravators outweigh the mitigators, if you find in your heart of mercy that there should be a sentence less than death, then you can give that. I know that I come from Oklahoma. I moved here from Oklahoma three years ago, and that's how the jury was instructed. I understand your point. Your point is that the judge told the jury, absent mitigators, you must automatically, mandatorily impose the death penalty. Correct. That's what you're saying happened. Yes, that was the way the instruction— You say that violates Woodson. Yes. Now, that's not a separate argument that was raised below, so I couldn't make that an argument in the case. What part of the COA is that? Like I said, it's not part of the argument that a certificate of appealability was raised on before, but I think it speaks to the competency issue. You're saying that you're procedurally defaulted on that, or what are you saying? What I'm saying, Your Honor, I'm out of time. You referred to it in your brief. She did not raise this point in the district court below, much less in the state courts, is what I'm going to guess. And just to be clear, I inherited this case on the appeal. No, no, it's not an accusation. But it's right. But I think it speaks to the competency issue of that Mr. Cowens didn't understand the mandatory nature of Ohio law, that if you don't put out any mitigation, it's automatically death. There are judges that don't completely understand all these death penalty systems, that a criminal defendant doesn't understand. It doesn't show incompetency. It does in a sense of not being able to rationally understand what he's waiving. Is the question of the mandatory nature of the instructions raised before the – as an issue before the Ohio Supreme Court? I don't believe so, Your Honor. What they raised before the Ohio Supreme Court was the Eighth Amendment violation. Don't you have to list the things you're raising? The way they work in Ohio, they have a big list which follows the opinion. Do they have anything on that list? I thought they did. I don't recall specifically, Your Honor. Anyway, you don't think you are eligible to make that argument, huh? I think it relates to the competency issue of – and his waiver of the mitigation and whether or not it was an intelligent and knowing waiver, which ties back into the whole competency of whether or not he was really able to rationally understand what he was doing. But if we're going to try to tie it into competency so as to get around your procedural default, I thought the facts in this case were that the judge told him in so many words that were he to proceed with no mitigation, he would likely be sentenced to death. Would likely be sentenced to death. That's the key word, Your Honor. He didn't say you will be sentenced to death. And the instruction to the jury was if the aggravators outweigh the mitigators, you shall impose death. Is the jury in one of these cases – and I should know the answer to this, but I don't – is the jury in one of these cases entitled, even though nobody identifies something and puts a mitigation label on it in the penalty phase, is the jury entitled to go back, because they're the ones that heard the case, and decide whether from what they did hear there is something mitigating about that particular defendant? Such as residual doubt. Like in this case, because he was claiming innocent, if a jury had any residual doubt that he might not be guilty, maybe they would sentence him less than death. My understanding of reading the instructions here, Your Honor, is the jury had no choice. The jury was told – But why would the jury ever be bound by whether a lawyer who can only make argument identifies whether something as being an aggravator or a mitigator? That's what I don't understand. My understanding is, from what Ohio law is, the jury actually makes the eligibility determination in the guilt stage when they make the specifications that allow them to go to the death stage, and that those are considered part of the aggravators. So they've already made that decision when they find him guilty, and they find him guilty of the four separate murder counts that involve the robbery and the burglary and all those things, and that that makes him already eligible for the death penalty. Which is why, in the sentencing phase, the prosecutors don't put on any additional really aggravating evidence. It's all about what the defense puts on as mitigation, and which is why in this case there was just closing arguments because there was nothing to present. There was nothing there. The jury didn't have anything, and the jury was told what counsel argues is not even mitigation. I see your red light is on. Yes. We'll give you your full rebuttal because you were responding to questions, but why don't we hear from the state? Thank you, Your Honor. Good afternoon. My name is Brenda Likala from the Ohio Attorney General's Office, and I represent the warden in this case. To start off with some of the questions that you asked Petitioner's counsels, Your Honor, the question of where did the information about him being or having, excuse me, not wanting to put his family through anything additional was in the Smaldon Affidavit at post-conviction, is where that was located. So that's the psychiatrist? That was the psychologist that was hired pretrial to prepare the mitigation. He put that in his post-conviction affidavit, which was submitted. Did he meet with them again after the guilt phase? I'm sorry? Did he meet with the Petitioner again after the guilt phase? I do not believe so, Your Honor. So he didn't, then this idea that he didn't want to put his family through it was something he had in his mind before the guilt phase even started. Yes, Your Honor. And potentially only while he was acting rationally. Exactly, Your Honor. Well, don't say exactly with a smile. I mean, that hurts you a little later on because now he's, this was used to show that he was acting rationally and waiving mitigation. But if the point was raised before all this happened, how helpful it is. No. Your Honor, I would submit that he's been acting rationally this entire time. He was acting rationally when he spoke to Mr. Smaldon. He was acting rationally all during the trial. Well, in the eyes of the beholder, whether protecting your dysfunctional family is worth what turns out to be potentially the ultimate price here. You're right, Your Honor. But Dr. Smaldon even put in his post-conviction affidavit that at the time, he was unable to gain Mr. Cowan's trust to have him open up about his family because he wanted to protect his family. He did not want to put them through anything else. I would submit that that's acting very rationally in that he has a desired goal, and he is protecting that goal. The test for competency is not whether he actually acts rationally. It's whether he has the capability to act rationally. The test is – Can you remind me of one thing in the Smaldon affidavit I should know? Sure. Was he saying in the context of the conversation you were just reporting, repeating, that he didn't think he'd want to put any mitigation evidence on? No, Your Honor. He did not say at that time he did not think he would want to put any mitigation evidence. Mr. Cowan had directed Mr. Smaldon to obtain the mitigation evidence without talking to his family. He did not want to put his family through the embarrassment of talking. I got it. Okay. Was it a fact that not putting any mitigation and not putting any mitigation evidence on, not having any mitigation or mitigating factors before the jury, made the death penalty automatic in this case? No, Your Honor. The jury was never instructed that because Mr. Cowan did not submit any mitigation, you must return a verdict of death. They were instructed that they had to weigh the aggravating factors versus the mitigating factors. And one of those mitigating factors is that they could look back to the trial phase and anything that was testified to, they could look back and determine whether the ---- You're saying there was, there were mitigating factors before the jury. They could have found the residual doubt argument. They could have looked back and used that as a mitigator because one of the mitigating factors is anything about the crime and circumstance or anything about the defendant that could, you know, reasonably and arguably be mitigating, the jury is allowed to consider. And no time during the jury instructions in this case was the jury said or told that because Mr. Cowan refused to put on mitigation, you must return a verdict of death. So they were told that if you find that the, they had already found an aggravating, one or more aggravating factors that made him eligible for the death penalty, and then they were advised that if you find that the aggravating factors outweigh the mitigating factors, you must return a verdict of death. Is that the instruction? The instruction, Your Honor, I believe is worded that if you find that the aggravating circumstances outweighed the mitigating factors, you shall return a verdict of death. But again, as Judge Sutton indicated, that was not an issue that was raised either at the- And you're saying that that's not before us because it's been, if there were such an issue, it's been waived. Yes, Your Honor. But would argue that there is no such issue as well. So we had this colloquy before about whether there was prejudice from, you know, the potentiality that he was incompetent. There was no hearing to figure it out. We now don't know. What is the answer to that? I mean, because it's not obvious to me. I could imagine someone saying this is kind of a structural thing. It's so important you wouldn't even get to a prejudice inquiry, but I could imagine another side of it that you have to show prejudice. What's the answer? Your Honor, I would submit that the answer is that you must show both prongs of Strickland that would be prejudice because the- Well, but that's if you're arguing it as ineffective assistance. But let's say it's just a pure drope claim. Hey, listen, the signals were there. A hearing should have been held. A hearing was not held. After you've shown all that, does the defendant really have to come forward and show how this would have made a difference? I believe even under drope, Your Honor, he would need to show how this would make a difference because if the argument is if there's just some doubt, and I would submit that there is no bona fide doubt in this case, but if the ruling out of this Court would be that if there's some doubt that they would have to hold a competency hearing, we would end up having cases invalidated for reasons that the panel has described, the fact that he doesn't get what he wants and he acts out. That's exactly what this defendant is doing. I don't want to spend too much time on it because people aren't arguing it, but it seems to me like you wouldn't have to show prejudice. I don't understand how if someone's truly incompetent, where would you start in figuring out how this prejudiced? By definition, you can't know. You can't trust the things he didn't ask, right? So there's all the things he could have done had he been competent. He didn't do. So that's just pure silence. You might have things the attorney can say they would have done or tried to do It seems like an impossible inquiry. Your Honor, you would not get to the prejudice in this case because there is no bona fide doubt. I get your argument on that point. I was just curious about the other one. Now, in addition. There's no problem in this case about that search, I take it. I'm sorry? The search that was conducted without a warrant. There was an ineffective assistance of counsel claim raised about how the search was not adequately argued at the search warrant stage. And we would submit that there is no ineffective assistance of counsel there. Is that before us, that question? Your Honor, that was one of the assignments of error that was granted a COA through ground two. All of the encompassing ground two arguments, I believe, were granted a COA. But just the ineffective assistance part of it. Just the ineffective assistance, not the underlying search. And the reason that's not raised is because of Stone v. Powell? I believe that that would be correct, Your Honor. Now, as to the competency, we would certainly argue that he was competent, that there was no bona fide issue of his competency. We would also submit that Mr. Cowens was adequately aware of the fact that he was waiving mitigation, could and most certainly had the possibility of having a death sentence. Because he went through a colloquy with the trial court, which lasted over two days, in which the trial court asked him repeatedly, are you sure you want to do this? Do you understand what this means? And explain to me, the trial court to Mr. Cowens, explain to me why you want to do this. And when Mr. Cowens was addressed by the court, he indicated that the jury was going to be biased against him, and he wanted no part of that. And so therefore you think the trial court tried to advise him that he was basically doing something that was equivalent to committing suicide. He was going to get the death penalty if he didn't put on any mitigation. I believe that the trial court was trying to advise him that if you take this course of action, these are the possible consequences, which is certainly appropriate, but not constitutionally required. But the trial court, in abundance of caution, was trying to inform him, in case his attorneys had not, but his attorneys even indicated they had also gone through lengthy discussions with him about the consequences of his decision. And he was fully aware, both through his counsel and the representations of counsel, as well as from the trial court over the two-day colloquy, that his waiver of mitigation could result in the death penalty. And in addition, the fact that he professed his innocence all through the trial is further reason for a defendant to possibly waive mitigation, because you would then have a situation where the defendant says, I'm innocent. However, if I did this, I had good reason. Yeah, but making that sound like the norm, that's hardly the norm, that people that profess their innocence don't put on mitigating evidence. That's just not the norm. Your Honor, in Ohio, that has happened in multiple cases. You had that in Ashworth. You also had that in State v. Keith, where he also professed his innocence. There's like 200 death penalty cases out there. That's not exactly a trend. Your Honor, I would submit in Ohio it is not exactly the most unusual circumstance. When somebody has professed their innocence and adamantly professed their innocence, they can and do waive mitigation. And I'm not saying that that happens all the time, but it is a logical choice for a defendant. And the fact that he waives mitigation should not be held to be a reason of possible incompetence. Do you know of a lawyer that's ever recommended that? I do not know of an attorney that has ever recommended it. In fact, most of the defense bar, I believe, would try to talk them out of that. Yeah. They can still claim in the sentencing phase of the case their innocence. They're not prevented from making that argument as a further claim in mitigation, right? That's correct, Your Honor. He didn't do that. No, he did not do that. He did not present any mitigation, and that was through his choice that he did not present mitigation. So don't tell them any more that I'm innocent and I'm not going to put on any mitigating evidence. And hence, the court is going to tell the jury that if you find that the aggravators outweigh the mitigators, you must return the verdict of death. That's what's going to happen. That's what did happen. That is what did happen, Your Honor, and he was adequately informed that that was the possibility should he choose that course of action. And we don't have any issue here about the automatic nature of the death penalty because it's been waived by counsel? Your Honor, I believe that that issue has been waived by counsel. I would also believe that there is no automatic death penalty because the jury was not told that you must return a verdict of death because he did not present mitigation. They were told to waive. Well, what happens to a tantamount to an automatic verdict of death? It was his choice, Your Honor, and it was a rational choice. And there is no place in the ---- I mean, suicide sometimes is rational, but that's basically what he did. I would argue that he is committing suicide, but, Your Honor, there is no United States Supreme Court precedent that says that a waiver must be ---- The Supreme Court precedent says a man can't commit suicide in one of these cases if that's what he wants to do. Your Honor, that's correct. The United States Supreme Court has said it's perfectly acceptable for a defendant to waive mitigation. And in the Supreme Court in Shiro, that's exactly what happened. In Shiro, the defendant actively prevented his counsel from obtaining mitigation evidence, and the Supreme Court of the United States said that we've never said that you have a mandate that a defendant must submit mitigation against his will and that there is no requirement of knowing an intelligent waiver of mitigation. It's not the same point, but it's similar, is that people waive appeals all the time. In fact, they decide, I'm just not going to appeal anymore, or the execution date is a couple months out. The lawyers tell them you could try the federal route and try a successive petition. You could try something at the state route, and they don't try it. It's not the same thing as waiving mitigation, I must say, but I don't think people say that proves you're incompetent. That's exactly right, Your Honor, and that's exactly where I was going with that. Before you go down another path, could I take you back to just bare competency for a minute? Yes. What DROPE is talking about is what the indicia are of what somebody should be looking at to question whether somebody's competent, but it doesn't tell us what competence is. Competence, as I understand it, whether we're talking about competence to stay on trial before the trial starts or a question of competency to continue with the trial, I think, and this is where I want you to tell me if I'm going down the wrong path here, talks about whether somebody is able to understand the nature of the charges against them. Now, what I'm trying to figure out in terms of these three stages of the trial where this guy either acted out or made a decision that seemed to be not in his self-interest, whether any of that even suggests that he didn't understand the charge against him. In other words, that he'd raped this woman, or not raped, excuse me, that's the wrong term, that he'd murdered this woman and tied her with an extension cord to the refrigerator. Is there any place in the record where he said or did anything that suggests to you that he didn't understand what he was charged with? No, Your Honor. Then we go on to the second prong, which is effectively and rationally assist in his defense. So I think there was a suggestion earlier that I might have been asking about that because I was then going to go to prejudice. I wasn't going to go to prejudice at all. It seems to me that the reason that one would inquire as to whether there's any evidence that he had problems with his attorneys is that's how you would then look to the question of whether he could effectively and rationally assist in his defense. In other words, did the lawyers ask him about anything? Did they ask him to explain something, to direct them this direction or that direction? And all we've heard so far is that he wouldn't talk about his relationship with his cellmate Napier, right? Yes, Your Honor. So is there anything other than the Napier incident that would suggest, not for prejudice purposes, but rather for competency purposes, whether he could or could not effectively and rationally assist in his defense? Because I don't see where this acting out ipso facto has anything to do with whether he could effectively and rationally assist in his defense. Your Honor, I don't believe that there's anything in the record that indicates that he could not assist his attorneys. In fact, there's ample evidence in the record that absent and after the court denied him repeatedly a new attorney, that he actually did listen to them. When he was removed from the courtroom and placed with an attorney, the attorney was able to communicate with him, brought back those messages to the court, and said, Your Honor, I've talked to him. He does not wish to come back to court. He does not wish to be put back in the little room downstairs with the TV. He wants to go back to jail. He was communicating with his attorneys. Now, the test is not whether the decisions he makes are good decisions. The test is whether he can make decisions. And in this case, he was able to make decisions. Whether they were or they were not in his best interests, they were still rational decisions. And they're rational decisions in his mind. He was directing his attorneys with what they, you know, what he wanted. And, you know, the test for competency is not whether he had capacity to reason logically by choosing means related logically to his ends. I'm sorry. The test is whether he had the capacity to reason logically by choosing means related logically to his ends. Not whether he actually employed those means. Well, before we get into that speculation, one of the issues here, as I understand it, was, and I'm not sure if this is the right word we use, it's an alibi defense. This woman was killed the night before, and he had an alibi for where he was. Now, somehow, that had to have been developed as a theory. And there's, so there must have been some sort of communication between lawyers. If, in fact, they could establish the death occurred the night before, and he had an alibi, then that would be effectively and rationally assisting in his defense. That's correct, Your Honor. Just to correct the record slightly, the state's evidence was that the murder happened sometime around 8 o'clock in the morning. He did claim that he had an alibi for 8 o'clock in the morning. But that obviously had to have been conveyed to his attorney so that they could argue that point. Weren't they also trying to show that she was killed the night before? So, obviously, he must have had an alibi for that, too. Your Honor, they were trying to, I believe that that has all come about now through the district court, through the ineffective assistance of counsel claim that there was green vegetative matter. That doesn't do him any good if he doesn't have an alibi for where he was the night before. Well, that would be correct. So the point of this, without getting into those details, is there obviously must have been some communication and discussion that led to that defense. Yes, Your Honor. So I can understand why during the trial it wouldn't be fair to put to the lawyers to explain exactly what they were asking him and what he refused to help him with. But certainly after trial, one would anticipate that if he couldn't effectively and rationally assist his defense, the lawyers would have said, look, this is what we needed him to tell us or to direct us to or to show us or whatever it was. Is there anything in this record where the lawyers say they called upon him for any purpose and he couldn't or wouldn't participate? Your Honor, the only place in the record that that is to be found is pre-trial when they had first filed their motion to withdraw, when they went to talk about both the Napier testimony, the jailhouse snitch, as well as the palm print evidence. He did not want to talk to them. It wasn't that he was unable to. It is he did not want to talk about that piece of evidence. Other than those two specific examples, the trial counsel never put in the record any other time period or any specifics as to what he would not do or talk to them about. It's fairly clear that the attorneys never had any bona fide doubt. They never raised a competency during the trial, as well as the prosecutor never raised that his disruptive behavior was indicia of incompetence. Neither did the trial judge. I'm gathering he provided information to them as to why his scent might have been found in the woods. He provided an explanation as to how the figurine and whatever else it was showed up in his closet. He explained that he did get it from the material by the tree in the yard, but that he didn't put it there. A lot of what came in from someplace came from him to his lawyers, I'm gathering, didn't it? Your Honor, I would submit that that would be correct. That would be the only logical place that the attorneys would have been able to come up with that, and that came through during their questioning and their cross-examination. Maybe the other side would respond, well, that just proves it waxed and waned. I'm sorry? I think the other side might respond, well, that just proves or shows his competency waxed and waned. Your Honor, they may argue that. I would submit that that would be an incorrect assessment of this case. I don't believe that his competency was ever at issue. He was competent throughout the entire thing. He made competent choices. Whether they were choices you or I would make is not the question. Do you know how many mental health experts before the trial in the case there were? Did the State have any mental health experts examine him, or how many examined him as a result of counsel for the defense seeking mental health expert? Do you know? Your Honor, I do not know the answer to that question. I do know that Dr. Smalden, for the defense, had examined him pre-trial. So that's the only one you know about? That is the only one that I could definitively tell you. Without speculation, I cannot answer that question. There's no claim in the case, however, that an effort was made to have him thoroughly examined by more than one. There's no evidence in the case about a problem in finding out about his mental health? No, Your Honor. There's nothing that indicates. It's not raised. Counsel hasn't dealt with that. They haven't dealt with that problem. Your Honor, I have not seen anything through the state court system at all about that, and that certainly was not raised at the federal level that I'm aware of. Unless the panel has any further questions, I would end my presentation. I don't think so. Thank you. We appreciate your argument. Ms. Wernicke, you've got, I forget what you asked for, five minutes. Was that it? Yes, Your Honor. Okay. You've got your five minutes. Maybe before you make your argument, you could answer that question I asked her. Do you know how many other than one of the experts were involved in examining him before trial, in this case, concerning his mental health? Dr. Smuldin is the only expert I believe that the trial counsel even requested or received. That goes, again, to the ineffectiveness that they didn't . . . I don't know if we necessarily rate it as not getting enough mental health, but the ineffectiveness for not even doing a more thorough mitigation investigation, because I think Dr. Smuldin, maybe Dr. Haskins, had indicated that he should have a neuropsychological evaluation, and that never happened before trial. Dr. Smuldin is the only expert, mental health expert. What is your claim about ineffective assistance of counsel? Does it have to do with not getting . . . It doesn't have to do with not getting sufficient expert testimony or having him examined. That's not what it is. No, Your Honor. It has to do only with his competency to stand trial. No, Your Honor. Actually, the ineffectiveness has a broad range of deficient performance that counsel did that ranges from not objecting to some of the mitigation or some of the prosperous conduct, not objecting to some of the evidence, not requesting other forensic experts like a pathologist, a fingerprint expert, a blood expert, or even a dog tracking expert. The guilt phase of the trial. Correct. But nothing raised about his mental health, other than competence. Correct. Other than just not requesting a competency hearing. Correct. And to raise some of the other questions . . . What's your response to Judge McKee's point? Because what he was, I think, establishing or suggesting was, you know, there are clearly incidents where he must have helped, okay? Then there's these . . . maybe it's two now where he didn't help, the jailhouse snitch and maybe part of the palm print. But anyway, let's just say for the sake of argument, there are two where he didn't help. But, you know, there's lots where he did. That just doesn't sound like someone who wasn't in a position to assist counsel with the defense. Well, Your Honor, like you articulated, it is waxing and waning. Boy, that's so elusive. True. And the standard isn't whether he does help. The standard is whether he is able to help. So we have to figure out if he didn't help during certain phases, why didn't he help? Did he not help because he couldn't, or did he not help just because for whatever reason he was mad and he didn't want to? Because that's not incompetence, is it? Correct. That wouldn't be incompetence. But the evidence here, as further supplied by Dr. Haskins, is that he, Mr. Cowens, has an inability to deal with stress, and he has poor coping skills because of his upbringing, because of his family background, which is the mitigation, that he had poor inability to cope with the stress. And the stress of the trial, pretrial, all the way through and culminated into his blowup after the guilty verdict. And the test from the United States Supreme Court, if I might, under Droke v. Missouri, which is 420 U.S. 162, the court said in Pate v. Robinson, we held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. So I think that kind of answers the question of do we have to show prejudice. We don't have to show prejudice. If there's enough in here to indicate that he may have been incompetent somewhere in this proceeding, somewhere in the trial, whether— The problem you have, counsel, with incompetence, is a very high barrier to overcome for a number of reasons, one of which is it's a permanent thing. The trial never occurs. That's number one. Number two, you have to be able to show that the person cannot confer with counsel and doesn't understand the nature of the case against him or what he's there to do. And that is very difficult to show when the person is otherwise participating in the trial in a way that would indicate an understanding. So I've had this problem a number of times. I agree with you. I've got another case right now. But in that case, there were nine mental health experts. Counsel brought—but not on competency. So the problem is you've got a barrier here to overcome that's almost impossible to overcome unless the conduct and behavior of the defendant is much more crazy than occurred here. And that's the point I'm trying to make, Your Honor, and I'm about to run out of time and I just have, is that competency doesn't have to be—it isn't just about mental illness. It isn't just about being quote-unquote crazy. Competency is not being able to rationally assist. No, it's not being able to understand the nature of the proceedings. Correct. And there's very—I don't see any evidence in this case that he didn't understand the nature of the proceedings. Well, at least at the sentencing stage, I don't think he completely—I don't think he understood the nature of the proceedings and what he was giving up. I think he decided he was mad, he was somewhat irrational in the sense that he was acting out of anger and depressed perhaps and sort of decided he'd just commit suicide. That's what it looks like. And just to— That is not incompetence. Just to answer your question is if this court were to find that there is a reasonable doubt, that there was a bona fide doubt as to his competency, that a reasonable judge should have ordered a hearing and it goes back, it doesn't mean that he could never be tried again. It didn't even mean at the time if the judge had conducted a hearing that he could never be tried again. It just means there needs to be a stop in the trial so that there can be a further understanding and explaining before the trial would proceed. Let me just seek to clarify one point you made so I understand it. When you were talking with me earlier and with Judge Merrick about whether he was able to understand the nature of the charges, you then sort of morphed into he wasn't— you claimed that he might not have been able to understand the nature of the mitigation phase of the proceedings. Now, that's different than the nature of the charges, which were that he had murdered this woman. So is there anything that extends this definition of competency that includes understand the nature of the charges to understand how each separate and distinct aspect of a capital prosecution works? Well, Your Honor, there could be that he could be— the court could find that there was enough there to question his competency for the sentencing stage and that the court would grant sentencing relief, that he needed a new sentencing hearing. But the argument that I'm presenting to the court is that that is just a snapshot of what the stress of the trial that made him unable to rationally assist. That was the most kind of obvious from the record that he wasn't able to rationally understand that proceeding and that there can be separate proceedings. There can be—he could be competent for the first stage but incompetent for the second stage in the purposes of not fully understanding the proceedings. I do have other things I'd like to say. Oh, I'm sure they're excellent, but I think we've heard enough. Thank you to both of you for your excellent briefs, oral arguments. These are very difficult cases, and it helps us greatly to have such excellent attorneys. So thank you very much. And if I might just take a judicial moment. These are my parents that are here. They live here in Cincinnati. Good timing. I just said she was excellent. I've been an attorney 20 years, and they've never been able to see me in action, so this is quite exciting that they— I moved here almost three years ago, and my husband is here as well. Oh, that's great. Well, welcome. You did a great job. Thank you. All right. Thank you very much. The case will be submitted in the—